UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOWARD RICHARDSON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 04-11412-NG |
| ) | |
| SUSA PARTNERSHIP, L.P., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF DEFENDANT IN SUPPORT OF
## ITS MOTION FOR SANCTIONS

Defendant, SUSA Partnership, L.P. ("SUSA" or "Defendant"), moves to dismiss Plaintiff's Complaint pursuant to the Court's inherent authority to sanction litigants for engaging in fraudulent conduct during the discovery process. This memorandum is submitted in support of that motion.

## INTRODUCTION

Plaintiff was employed by SUSA as a maintenance person at SUSA's storage facility in Haverhill, Massachusetts until April, 2002, when his employment ended because of his misconduct. On Saturday, April 20, 2002, Plaintiff appeared briefly for work, left for most of the day, and then returned to work admittedly intoxicated after consuming five or six mixed alcoholic beverages. On the following day, Sunday, April 21st, Plaintiff failed to show or call for work as planned. Plaintiff was terminated from his employment for violating SUSA's Drug and Alcohol Policy, which prohibits the use or possession of alcohol at SUSA facilities and forbids employees from reporting for duty or being on the job while under the influence of alcohol.

On June 22, 2004, Plaintiff filed a Complaint in connection with the termination of his employment, naming Defendant SUSA. The gravamen of his Complaint is that SUSA discriminated against him on the basis of race[1] when it suspended and terminated his employment in April 2002. Specifically, Plaintiff alleged violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* The basis of Plaintiff's claim of race discrimination is that SUSA suspended and discharged him on the basis of false accusations of misconduct. In the complaint, Plaintiff states that SUSA suspended and subsequently terminated his employment for allegedly showing up for work intoxicated on April 20 and 21, 2002 when he was not scheduled to work either of these days. At his deposition on June 13, 2005, Defendant admitted that he was at the facility intoxicated on April 20, 2002, but claims that he was not scheduled to work that day. Instead, he claims he was at the facility for just five minutes to drop off a set of keys.

Plaintiff's time sheet for the week ending April 21, 2002 indicates that Plaintiff worked 1.5 hours on Saturday, April 20th and failed to show for work on Sunday, April 21st. At his deposition, Plaintiff authenticated this time sheet, testifying under oath that it was his signature on the bottom of the page and that he dated the document. The fact that Plaintiff's time sheet evidences he worked 1.5 hours on April 20th fatally undermines his contentions that he was not scheduled to work that day and that he did not in fact work that day.

At this deposition, Plaintiff's attorney asked for a break. After resuming the deposition, Plaintiff recanted his earlier testimony and testified that the signature at the bottom of the page was *not* his and must have been forged. As a result of Plaintiff's actions, which strongly indicate that Plaintiff has little respect for the judicial process's search for truth, and an obvious inability

---

[1] Plaintiff does not specify his race in the Complaint.

to proceed with his claims in a fair and proper method, Defendant respectfully submits that the Court should dismiss the Complaint or otherwise sanction Plaintiff.

### I. Plaintiff Suspiciously Retracted Critical Testimony at his Deposition After Conferring with his Attorney

On June 13, 2005, SUSA deposed the Plaintiff and asked Plaintiff about the events of April 20 and 21, 2002. Plaintiff denied working on April 20th. (Pl. Tr. 60). Plaintiff also testified that although he was not scheduled to work on April 20th, he was at the facility that morning for approximately five minutes when he brought his colleague's keys to the managers running the facility. (Pl. Tr. 14, 16).[2] Plaintiff also testified that he returned to the facility at the end of the day to collect these keys. (Pl. Tr. 18-19). Plaintiff was admittedly intoxicated when he returned to the facility that afternoon, with a "buzz" from drinking five or six mixed cocktails that day. (Pl. Tr. 28-30, 48). Plaintiff claimed that he was discharged in part for failing to show up for work on April 21st, but that he was not scheduled to work that day either. (Pl. Tr. 48).

Plaintiff's time sheet for the week ending April 21, 2002 was admitted into evidence at his deposition. See Time Sheet, marked as Exhibit A. This time sheet indicates that Plaintiff worked from 9 a.m. to 10:00 a.m. and from 5:30 to 6:00 p.m. on April 20th. (Pl. Tr. 59). Under oath, Plaintiff verified that the signature at the bottom of the time sheet was his and that he had dated the document April 21, 2002:

> Q: I would like you to take a look at Exhibit 6 [the time sheet] for identification, please. Take a look in the lower right-hand corner. Is that your signature there?
> A: (Examines document) Yes.

(Pl. Tr. 58-59).

> Q: Is that your Social Security number to the left of your signature ?
> A: Yes.
> Q: Is this the date that you signed it on the right, April 21st?
> A: Yes, I believe it was. I don't know.

---

[2] Relevant transcript pages of Plaintiff's deposition testimony are attached as Exhibit A to the Affidavit of Amanda S. Rosenfeld. References to Plaintiff's deposition testimony will be made by citing the page number of the transcript, e.g., "(Pl. Tr. ___)."

3

> Q:   Well, you dated this, correct?
> A:   Yes.

(Pl. Tr. 59; see also Pl. Tr. 62, 64).

After authenticating the time sheet, Plaintiff's attorney William Boland asked for a break to speak with his client. (Pl. Tr. 71). Shortly after the resumption of the deposition, Mr. Boland cross examined the Plaintiff regarding the time sheet, which Plaintiff had authenticated. Plaintiff proceeded to recant his previous testimony regarding the time sheet that evidences he worked the weekend in question:

> Q:   You were asked by counsel about Exhibit 6 [the time sheet]. Do you recall this document?
> A:   Yes. It's a time sheet.
> Q:   You were asked under direct examination if that was your signature.
> A:   Yes.
> Q:   Do you recall your answer to that question?
> A:   I believe I said it looks like my signature.
> Q:   Is that, in fact, your signature?
> A:   No, it's not.
> Q:   Is it not?
> A:   No, it is not.

(Pl. Tr. 87).

> Q:   Why would you say it looks like your signature?
> A:   It's close, but it's not my handwriting. It's definitely not my handwriting.

(Pl. Tr. 87-88).

On redirect examination, SUSA's counsel Thomas Smith inquired about Plaintiff's abrupt reversal of his testimony and asked Plaintiff to compare his signature on the time sheet to Plaintiff's signature on his answers to interrogatories, which he had already also authenticated[3]:

> Q:   Would you compare the signature on [Plaintiff's answers to interrogatories], and…your signature on the bottom of [the time sheet].
> A:   (Examines documents) Right.
> Q:   Those signatures appear to be, at least to a laymen, virtually identical. Why is it your testimony now that that's not your signature on [the time sheet]?

---

[3] See Pl. Tr. 56:
Q:   Could you tell us whether or not that's your signature [on Plaintiff's answers to interrogatories].
A:   Yes, it is my signature.

4

> A: Because I don't make my letters as they are on – what the heck is this document here – on [the time sheet]…In comparison to [Plaintiff's answers to interrogatories], they are not the same.
> Q: Mr. Richardson, why did you say initially that was your signature? Then you left the room with counsel and came back and said that was not your signature. Why did you change your mind?

(Pl. Tr. 88-89).

> A: Well, because I had some time to think about it, and it clearly appears not to be my handwriting. I mean, at first glance, it looks close enough.
> Q: It looks awfully a lot like the signature on [Plaintiff's answers to interrogatories], doesn't it?
> A: No, it does not, not even in the ballpark.
> Q: Really?
> A: Really.
> Q: You thought about that since you testified that it was your signature, and you thought about it and came to the conclusion that it was not your signature without ever even looking at it again; is that right?
> A: Actually, I had it right in front of me. Yes, it's not my signature. I clearly can see it is not.
> Q: Your position is that somebody wrote your signature and basically forged your signature; is that your testimony?
> A: Appears to be so.

(Pl. Tr. 89).

> Q: Do you have any idea why somebody would do that?
> A: I have no clue whatsoever.

(Pl. Tr. 89-90).

In response to Plaintiff's disturbing retraction of his testimony at his deposition, on June 22, 2005, Defendant's counsel, Thomas Smith, faxed Plaintiff's counsel Tom Gleason a letter in which he expressed Defendant's concerns regarding Plaintiff's (and his attorney's) behavior. See June 22, 2005 letter to Tom Gleason, attached as Exhibit B. In this letter, Mr. Smith recounted the events of Plaintiff's June 13, 2005 deposition, noting that "Mr. Richardson's recanting of his deposition testimony defies logic and is alarming." Mr. Smith attached to this letter a document that juxtaposes Plaintiff's handwritten signature from eight different documents, some of which Plaintiff had produced as part of his document responses. See enclosure to Exhibit B. One of these eight signatures was taken from the bottom of Plaintiff's time sheet for the week ending April 21, 2002 – the signature Plaintiff initially authenticated at

his deposition and then denied was his own. Mr. Smith pointed out to Mr. Gleason that these signatures were essentially indistinguishable from each other. See id.

**II. Plaintiff Cannot Raise a Genuine Issue regarding the Authenticity of the Time Sheet**

SUSA expects Plaintiff to argue that the copy of his time sheet introduced (and authenticated) at his deposition is not an accurate copy of the original time sheet and that his signature on the copy was forged.[4] The copy of Plaintiff's time sheet admitted into evidence – indeed authenticated – at Plaintiff's deposition is an authentic duplicate of the original and passes the Best Evidence Rule. When an original writing is not available to prove the contents of a writing, "A duplicate[5] is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original." Fed. R. Evid. 1003. The Federal Rules of Evidence further provide that a duplicate of a document is admissible in many instances where the original is no longer available.[6] A duplicate document can be authenticated based upon its "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." See Fed. R. Evid. 901(b)(4).

There is sufficient evidence for a reasonable factfinder to conclude that the time sheet offered into evidence at Plaintiff's deposition is a complete and accurate rendition of the original time sheet. Plaintiff has not proffered any evidence – besides his potentially perjurious testimony – that the time sheet entered into evidence at his deposition is not an authentic copy of

---

[4] SUSA no longer possesses the Plaintiff's original time sheet. SUSA performed an exhaustive search for the original, but it was likely purged in the normal course of business.
[5] A duplicate is defined as, "[A] counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which **accurately reproduces the original**." Fed. R. Evid. 1001(4) (emphasis in original). A photocopy of a document satisfies this definition of a duplicate.
[6] See Fed. R. Evid. 1004: "The original is not required, and other evidence of the contents of a writing…is admissible if (1) …All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."

the original.[7] Indeed, Plaintiff was confident that he had signed and dated the time sheet as it appeared at his deposition until he conferred with his attorney during a recess.

Furthermore, the time sheet can be authenticated based upon its "internal patterns" and "other distinctive characteristics, taken in conjunction with circumstances," when compared to Plaintiff's signature on various other documents.[8] See Fed. R. Evid. 901(b)(4); see also U.S. v. Mulinelli-Navas, 111 F.3d 983, 990 (1st Cir. 1997) As noted in the attachment to Defendant's counsel's letter to Plaintiff's counsel on June 22, 2005, Plaintiff's signature on the time sheet is virtually indistinguishable from Plaintiff's signature on no less than eight other documents that Plaintiff has signed, many of which Plaintiff produced as part of his document responses. See Exhibit A; enclosure to Exhibit B. This attachment shows in startling clarity that the signature on Plaintiff's time sheet is Plaintiff's own and undercuts Plaintiff's deposition testimony that the signature on the time sheet is "not even in the ballpark" of resembling his signature. (Pl. Tr. 89).

### III. Defendant Is Entitled To Sanctions As A Result Of Plaintiff's Efforts To Perjure Himself

#### A. The Court Should Exercise Its Inherent Powers To Sanction Plaintiff For His Blatant Untruths

It is "elementary" that federal district courts possess "the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). The First Circuit recognized this principle in Aoude v. Mobil Oil Corp., where the Court affirmed the dismissal of two related actions which were initially filed with reliance on a fabricated purchase and sale agreement for a

---

[7] A document is not deemed inadmissible "merely because one can conjure up hypothetical possibilities that tampering occurred." United States v. Balzano, 687 F.2d 6, 8 (1st Cir. 1982) (declining to question authenticity of duplicate tape where appellant failed to proffer testimony of alteration or tampering beyond statement that evidence was not the original) (quoting U.S. v. Cortellesso, 663 F.2d 361, 364 (1st Cir. 1981)).

[8] Upon a showing that the original is lost or unavailable, secondary evidence of original's contents may be received by the court. See, e.g., John Beaudette, Inc. v. Sentry Ins., 94 F. Supp. 2d 77, 137 (D. Mass. 1999) (admission of recreated insurance policies not barred by the best evidence rule).

7

service station. Id. at 1122. The Court noted that a federal district court judge has the power to order dismissal or default "where a litigant has stooped to the level of fraud on the court." Id. at 1119. The Court also set the standard for fraud on the court:

> A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

Id. at 1118. The Court noted that, "the district courts retain the inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner," which includes "combat[ing] those who would dare to practice unmitigated fraud upon the court itself." See id. at 1119; see also McMunn v. Memorial Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) ("when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his right to have his claim decided on the merits. This is the essence of a fraud upon the court.").

The Court followed Aoude in affirming the dismissal of a personal injury action in Hull v. Municipality of San Juan, 356 F.3d 98, 101-102 (1st Cir. 2004). There, the plaintiff sued a municipality and private parties for injuries he sustained when he fell on a sidewalk. Id. at 100. However, the plaintiff failed to disclose at his deposition and in his answers to interrogatories information regarding three prior injuries which overlapped with injuries claimed in the suit until the defense uncovered the information on its own. Id. The Court noted that it "strains belief" "that all three [prior injuries] would have been forgotten through happenstance or distraction" and that it was "hard to escape" the "inference of deliberate deceit" given the plaintiff's "obvious self-interest to enlarge his potential damages." Id. at 101. This convenient "pattern of deceit" justified dismissal of plaintiff's case. Id. at 102.

This principle has been applied in cases involving employment discrimination. See Knapp v. Convergys Corp., 209 F.R.D. 439, 442 (E.D. Mo. 2002); Martin v. DaimlerChrysler Corp., 251 F.3d 691, 694 (8th Cir. 2001). In Knapp, a Title VII sexual harassment case, the plaintiff willfully withheld information directly responsive to interrogatories and deposition questions by claiming in her answers to both that she had been unemployed for a period of time. 209 F.R.D. at 440-41. Through independent investigation, the defendant discovered that the plaintiff worked as an exotic dancer during the time she claimed to be unemployed. Id. at 441. In addition, the defendant discovered that while the plaintiff was working as an exotic dancer, she lodged complaints about customers and staff members inappropriately touching her. Id. Noting that the discovery deadline had passed and summary judgment had been filed and ruled upon, the court ruled that a more lenient sanction than striking of her pleadings and dismissal of her case with prejudice would neither repair the harm done to the defendant "nor remedy the 'direct affront to the court,' occasioned by Plaintiff's willful perjury," and sanctioned the plaintiff by dismissing her claims with prejudice. Id. at 443, quoting Chrysler Corp. v. Carey, 186 F. 3d 1016 (8th Cir. 1999). The court concluded that "[b]ased on Plaintiff's repeated acts of perjury, to which she admitted only when confronted with the truth by [defendant], this Court has no confidence that Plaintiff would conduct herself in a manner commensurate with fair and just proceedings should it permit this case to proceed to trial." Knapp, 209 F.R.D. at 443; see also McMunn, 191 F. Supp. 2d at 460-62 (former employee's disability claim dismissed and fees awarded where Plaintiff repeatedly lied and otherwise acted in bad faith during discovery process).

Similarly, in Martin v. DaimlerChrysler Corp., 251 F.3d 691, 696 (8th Cir. 2001), the Court of Appeals for the Eight Circuit upheld a dismissal of a Title VII sexual harassment, sex discrimination and retaliation action where the plaintiff gave perjurious answers during her deposition and in her interrogatory responses. There, the employer discharged the plaintiff after she received poor performance reviews for two consecutive years. Id. at 692. During her deposition, the plaintiff twice testified that she had never been a party to another lawsuit, specifically denying that she had been involved in litigation while at her previous job. Id. at 693. The employer subsequently learned that the plaintiff had sued her previous employer for sexual harassment, discrimination and wrongful termination. Id. The plaintiff also lied in her interrogatory answers with respect to mental health treatment she had received in the past, an issue central to her claim for emotional distress. Id. at 693-94. After holding that the plaintiff did in fact lie, the court assessed the level of sanctions to impose. The court concluded that dismissal was the only sanction that would effectively punish the plaintiff, lessen the prejudice to the defendant and protect the integrity of the proceeding. Id. at 695.

In this instance, Plaintiff has "engaged in a pattern of deliberate deception in the course of discovery." See Hull, 356 F.3d at 101. Plaintiff's deceit goes to the very heart of his case. The crux of the claim is that Plaintiff was not scheduled to work on April 20 and 21, 2002. As set forth above, Defendant has presented clear and convincing evidence that Plaintiff perjured himself under oath when he initially authenticated (and then denied signing) a time sheet evidencing he had worked one and a half hours on April 20, 2002. Plaintiff assumedly realizes the significance of having authenticated this document and retracted this testimony after a conference with him was suggested by his attorney, William Boland. The time sheet – that Plaintiff authenticated – undercuts Plaintiff's theories (1) that he was not scheduled to work on

April 20 or 21, 2002; and (2) that he did not work either of those days. Indeed, the time sheet evidences that he worked 1.5 hours on April 20th.

Plaintiff's proclivity for telling manifest untruths also is revealed in his discovery responses, which contradict his deposition testimony under oath. In Defendant's interrogatories, Plaintiff was asked, "[W]hether Plaintiff has previously instituted litigation or administrative charges against any other company, state, municipality or any other organization by which he was or had been employed or applied for employment." In his answers to interrogatories, Plaintiff responded, "Not applicable." However, at his deposition, Plaintiff testified under oath that he had in fact made a demand for damages against a Patriot Ambulance attendant for injuries he sustained while being transported to the hospital. (Pl. Tr. 72-73). As in <u>Aoude</u>, <u>Hull</u>, <u>Knapp</u>, and <u>Martin</u>, Plaintiff's claims should be dismissed as a sanction for his deliberate concealment of relevant information and pattern of deceit. Plaintiff's credibility is further undermined by the fact that he has been convicted for driving under the influence on three separation occasions and served two years and thirty days in prison for a felony conviction for sale and possession of cocaine. (Pl. Tr. 42, 51-2). This Court should thus exercise its "inherent power to deny the court's processes to one who defies the judicial system by committing a fraud on the court" by granting Defendant's motion to dismiss. See <u>Aoude</u>, 892 F.2d at 1118.

### B. In The Alternative, The Court Should Order Plaintiff To Pay Attorneys Fees And Costs Or Enter Another Appropriate Sanction For The Abuse Of The Discovery Process

In the event that, in exercising its discretion to determine the appropriate sanction, the Court declines to dismiss Plaintiff's claims as an appropriate sanction as in <u>Knapp</u> and <u>Martin</u>, the Court should exercise its inherent authority to sanction misconduct during the discovery process by ordering attorneys' fees and costs or some other appropriate sanction. <u>Morris v. McMaster-Carr Supply Co.</u>, 2002 U.S. Dist. LEXIS 10484, at * 6 (N.D. Ill. June 6, 2002).

For example, in Morris, a race and gender discrimination case, the court utilized its "inherent power to sanction litigants for giving false testimony at a deposition and submitting false answers to interrogatories." 2002 U.S. Dist. LEXIS 10484, at *1-4. The court sanctioned the plaintiff by awarding fees and costs incurred in connection with the investigation of the plaintiff's answers to interrogatories and the filing of the motion for sanctions. Id., at *12 The Court further ruled that all facts associated with the plaintiff's false information should be deemed to be true, precluding the plaintiff from disputing that he was terminated from the prior employer because his performance was poor. Id. These sanctions were held to be proportionate to the plaintiff's misconduct in discovery. Id.; see also Premier Homes and Land Corp. v. Cheswell, Inc., 240 F. Supp. 2d 97, 99-100 (D. Mass. 2002) (sanction of fees and costs awarded under court's inherent powers where fraudulent documents offered in prosecution of claim).

Here, if the Court declines to dismiss Plaintiff's Complaint, it should enter some sanction for Plaintiff's deliberate misconduct at his deposition.

### Conclusion

For all of the foregoing reasons, Defendant requests that the Court allow its motion for sanctions and dismiss Plaintiff's Complaint for his fraudulent conduct. Alternatively, Defendant requests that the Court exercise its authority to order some other appropriate sanction.

Respectfully submitted,

SUSA Partnership, L.P.

/s/ Amanda S. Rosenfeld
Thomas Royall Smith (BBO # 470300)
Amanda S. Rosenfeld (BBO # 654101)
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Dated: September 15, 2005